## COUNTY OF WORCESTER, OCTOBER TERM 1839, AT WORCESTER.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE,
Hon. MARCUS MORTON,
Hon. CHARLES A. DEWEY,
} Justices.

## Isaac B. Woodward et al. versus George Marshall et al. and Trustees.

Two insolvent debtors, partners, make an assignment, in which, in consideration of their being indebted and " of their wish to apply the avails of their property fair-ly in discharging their debts, according to *St.* 1836, *c.* 238," they transfer to as-signees " all and singular the real estate, including a pew owned by one of the as-signors, the goods, chattels, rights, claims, debts, dues and demands of every kind and description not exempted by law from attachment, however described and wherever situate, or from whomsoever due," in trust for the payment of their cred-itors who should become parties, without preference, pursuant to the statute ; and it is stipulated, that "a schedule of said property, debts, &c. is to be prepared and made a part of this instrument when completed " ; and the debtors make oath that they have, " by the within assignment, conveyed all their property not exempted by law from attachment, for the benefit of all their creditors, according to the true in-tent and meaning of the statute "; but simultaneously with the assignment the owner of the pew gave a deed of it to the assignees, for the purposes of the as-signment. The assignment was executed by the assignors and the assignees only, when a creditor of the partnership attached the property in the hands of the as-signees, by a trustee process, and soon afterwards the schedule was annexed to the assignment. It was *held*, that the description of the property assigned was suffi

eiently definite ; that the annexation of the schedule was not a condition precedent to the operation of the conveyance ; that a clause authorizing the assignees to finish and prepare for market, goods in the process of manufacture, was not inconsistent with the statute, and did not invalidate the assignment ; that the language of the assignment and of the oath, was comprehensive enough to include all the individual as well as the partnership property ; that if the oath were false, this would not impair the right of the assignees to hold the property for the benefit of the creditors, though it might deprive the debtors of the right to a discharge under the statute ; that if a note were made by the assignors to the assignees in fraud of the creditors, it would not defeat the assignment, but the creditors would be entitled to have the trust fund administered according to the statute, and the time to object to the fraudulent note would be when the respective claims of the several creditors should be brought forward with a view to the distribution of the assets in the hands of the assignees ; and consequently that the assignees were not chargeable on the trustee process.

In the answers of John Turner, one of the two supposed trustees, he states, that they have no property of the principal defendants except such as came into their hands under and by virtue of an assignment, dated the 25th of April, 1838. By this assignment, which is by an indenture between George Marshall and John C. Turner, the defendants, whip-manufacturers and partners, of the first part, the supposed trustees, of the second part, and such of the creditors of the defendants as should become parties, of the third part, the defendants, " in consideration of their being indebted in sundry sums of money and of their wish to apply the avails of their property fairly in discharging said debts, according to the provisions of *St.* 1836, *c.* 238, assign to the supposed trustees " all and singular the real estate, including a pew owned by said George, the goods, chattels, rights, claims, debts, dues and demands of every kind and description, not exempt by law from attachment, however described or wherever situate or from whomsoever due," in trust to convert the property into money and pay out the same to the creditors " without preference and *pro ratâ*, according to the amount of their respective claims, according to the true meaning and effect of the aforesaid statute " ; and it is agreed that the assignees may cause a part of the property, being unwrought whip-stock, to be wrought before disposing of it ; and " a schedule of said property, debts, &c. is to be prepared and made a part of this instrument, when completed." The debtors made oath, on the 25th of April, that " they have by the within assignment conveyed all their property not exempted by

law from attachment, for the benefit of all their creditors, according to the true intent and meaning of the act herein referred to." The respondent states, that the indenture was executed by the assignors and assignees before the plaintiffs' writ was served upon the respondent, and by one Upton, a creditor, afterwards ; that the respondent was a creditor of the assignors, to the amount of about $ 500, that the other assignee was a surety for them for $ 125, and that Upton's claim was for $ 2 ; that the property assigned was of the value of $ 2680 ; that a part of it, amounting to more than $ 400, consisted of choses in action ; that the only real estate of the debtors, or either of them, was the pew, a deed of which was given by Marshall to the assignees simultaneously with and as a part of the assignment, and was ackowledged and recorded on the same day ; that the deed contains the clause, "said pew is conveyed hereby in trust for the benefit of creditors agreeable to an indenture of assignment of even date herewith made by myself and John C. Turner to the above named grantees, to which reference is hereby made," *habendum* "for the uses aforesaid " ; that a schedule was prepared as soon as it could be made, which was annexed to the indenture as soon as it was completed, on the 27th of April, about three hours after the writ was served on the respondent ; that the assignors finished the stock actually begun to be wrought, for the purpose of enabling the assignees to dispose of it, as the unwrought stock would have been of little or no value to sell in the market, and the working of it would be of great advantage to the creditors, but no new stock was bought except a small quantity of materials necessary to complete the unwrought stock ; that J. C. Turner, one of the defendants and son of the respondent, received money of the respondent to begin business with, which, if he had been successful, the respondent probably would not have called on him to repay, but the respondent never agreed that he would not, nor had the son any legal right to refuse payment, as the money was not a gift to him ; that the respondent held no note for it against his son, and about a week before the assignment, a note for $ 1000, covering this money, was given to the respondent, signed by Marshall in the name of Marshall & Turner, and dated back to near the time when the money was advanced ;

that at the time when the note was made the defendants talked of making a mortgage to the respondent, and it was not until after they had learned that a mortgage of the property in the hands of pedlers would not be effectual, that they concluded to make an assignment ; that after the failure, the respondent exhibited this note as holding it against the company, but he concluded immediately not to claim it but to give it up, and it has not since been considered by the respondent as a claim against the assigned property.

*Torrey* and *Wood*, for the plaintiffs, objected to the assignment, that it was too vague and indefinite ; *Emerson* v. *Knower*, 8 Pick. 65 ; *Scott* v. *Coleman*, 5 Littell, 349 ; *Coit* v. *Starkweather*, 8 Connect. R. 289 ; *Clap* v. *Smith*, 16 Pick. 247 ; *Drakeley* v. *Deforest*, 3 Connect. R. 272 ; *Ingell* v. *Nooney*, 2 Pick. 362, [see 2d ed. Perkins's notes] ; *Worthington* v. *Hylyer*, 4 Mass. R. 196 ; that the debtors are required to make oath that by the assignment they have conveyed all their property, whereas it appears that real estate was conveyed by another instrument ; that a schedule of the property ought to have been annexed to the assignment before it was sworn to, in order that it might be determined whether the oath was or was not true ; that the statute intends that the property shall be speedily converted into money, to be distributed among the creditors, but if the assignees are allowed to manufacture property assigned, the distribution may be unreasonably delayed ; that the defendants assign as copartners, for the benefit of *their* creditors, and the oath, in effect, is, that they have assigned their *joint* property only, and if either of them had separate property, he could not be convicted of perjury ; whereas they ought to have assigned their joint and separate property, and the oath should be in accordance with such an assignment ; and that the intention of the assignors and assignees was to apply the partnership property to the payment of a debt due from one of the partners only, and the assignment therefore was fraudulent and consequently void. *Widgery* v. *Haskell*, 5 Mass. R. 151 ; *Hills* v. *Eliot*, 12 Mass. R. 31 ; *Burlingame* v. *Bell*, 16 Mass. R. 324 ; *Harris* v. *Sumner*, 2 Pick. 129, [see 2d ed. Perkins's notes] ; *Prince* v. *Shepard*, 9 Pick. 176 ; *Russell* v. *Woodward*, 10 Pick. 408.

*Woodward*
*v.*
*Marshall*
*and Trs.*

*Oct. 9th,*
*1838*

Woodward
_v._
Marshall
and Trs.

_Oct._ 10_th,_
1838.

*Washburn,* for the trustees.

Morton J. delivered the opinion of the Court. The lia‹ bility of the trustees depends upon the validity of the deed of assignment. This is in pursuance of the 238th chapter of the statute of 1836, and substantially conforms to its provisions. This statute made a radical change in the law of assignments by a debtor for the benefit of his creditors. Before, the debt‐ or might prefer some creditors to the exclusion of all others ; now, the distribution must be equal among all. Formerly, the property might be arrested in the hands of the assignees by at tachment ; now, it is holden by them for distribution among all the creditors who, before the first dividend, may elect to be‐ come parties to the assignment. Although the demands of those who have signed the indenture, are not sufficient to ab‐ sorb the whole avails of the property assigned, yet it cannot be known that it will not be needed to meet the debts of those who may eventually become parties. But however this may be, the statute makes " such assignment valid and effectual, against any attachment or execution thereafter made or levied on any of the property so assigned."

Several objections have been urged against the legal obliga‐ tion of these indentures, which we will examine.

1. It is contended that the description of the property as‐ signed is so vague and indefinite, that the instrument is void for uncertainty. There is no doubt that every instrument of trans‐ fer must contain such a description of the grantee and of the property intended to be granted, that both may be identified with reasonable certainty. *Worthington* v. *Hylyer,* 4 Mass. R. 196. These are to be ascertained, not by any artificial or‐ arbitrary rules of construction, nor by a rigid adhesion to the literal interpretation of detached phrases ; but by the plain im‐ port and meaning of the whole instrument. In any view of this assignment, we can perceive no essential defect of this kind. When the assignors undertook to convey " all and sin‐ gular, *the* real estate," " chattels, rights, claims, debts," &c. the conveyance could only operate upon such estate, &c. as they had the power to convey, and therefore must be under‐ stood to refer to *their own* estate, &c. But were this doubt‐ ful, a reference to the previous recital by them of their desire

to apply the avails of *their* property according to the provisions of the statute, would make it sufficiently certain.

The ordinary rules of conveyancing must apply to and govern transfers of property for the benefit of creditors. There certainly is no reason why principles quite as liberal should not be adopted. A conveyance of all a man's estate in a particular town, county or state, or generally of all a man's property wherever situated, would undoubtedly be valid and operative. Bac. Abr. *Grant, H ; Jackson* v. *Delancey,* 11 Johns. R. 373 ; *Ward* v. *Bartholomew,* 6 Pick. 409 ; *Litchfield* v. *Cudworth,* 15 Pick. 26. So in the return of an officer upon a writ, which is one step in a statute mode of conveyance and is quite analogous, the same description is always deemed sufficient to constitute a legal attachment. *Taylor* v. *Mixter,* 11 Pick. 341 ; *Crosby* v. *Allyn,* 5 Greenleaf, 453 ; *Howard* v. *Daniels,* 2 N. Hamp. R. 137.

2. The language used is sufficiently comprehensive and well enough chosen to convey all the individual, as well as partnership property.

3. The omission to annex a schedule of the property assigned and of the debts due, is not a fatal objection. A schedule, though a convenient and useful appendage, is not an essential part of an assignment. Whenever the instrument is intended to be complete without the schedule, and contains a sufficient description of the property, there can be no doubt that it will be an effective conveyance. *Stevens* v. *Bell,* 6 Mass. R. 339 ; *Emerson* v. *Knower,* 8 Pick. 63 ; *Clap* v. *Smith,* 16 Pick. 247. The instrument contains a stipulation, that a schedule shall be prepared and annexed when *completed,* and then become a part of the contract. This may be a covenant for the breach of which an action would lie ; but to suppose that it was a condition precedent to the operation of the conveyance, and that the instrument was not to be *complete* so as to vest the property in the assignees before the schedule was annexed, savors more of philological nicety than of sound construction.

4. The oath of the assignors appears to be in conformity with the proviso of the first section of the statute, and as far as practicable, in its very words. Were this oath proved to

Woodward
*v.*
Marshall
and Trs.
be false, we cannot perceive how this fact would impair the right of the assignees to hold the property for the benefit of the creditors, whatever effect it might have upon the discharge under the 9th section. But we can see no foundation for this suggestion. The assignors swore that, *by the assignment*, they conveyed all their property. The objection is, that one of them conveyed some real estate by a separate deed. If the deed was anterior to the assignment, so that the pew passed by it, then it is literally true that *all* the property which the assignors had when they executed the assignment, passed by it. If the deed was subsequent to the assignment, then the pew passed by the latter instrument, the language of which as we have already shown, was broad enough to cover individual as well as partnership property. If both instruments, agreeably to the intention of the parties, took effect simultaneously, then the assignees might elect to hold under either of them, according to the interest of the *cestui que trusts.* But both being made to the same parties, for the same purpose, and subject to the same trusts, it cannot be material under which the pew is holden. The fairest way of treating them would be to consider them as one legal act, the deed being subsidiary to the assignment. But in either aspect we can discover no fraud, actual or constructive, much less perjury, in the transaction.

5. The clause in the assignment authorizing the assignees to work up the stock in the process of manufacture, is not, in our opinion, incompatible with the provisions of the statute, and certainly does not invalidate the whole instrument. It does not violate any express prohibition, and we cannot discover that it is at variance with the general object and spirit of the statute. The principal duty which devolves upon the assignees, by their acceptance of the trust, is to convert the property placed in their hands, into money, in a manner the most speedy and the most beneficial to the creditors. They of necessity have some discretion in the administration of the trust property. If it be perishable, they are bound to resort to the proper means for its preservation, until it can be advantageously disposed of. If there be no opportunity to sell, it must be taken care of till a favorable change in the market occurs. So if it be unsalable by reason of the unfinished state of its manufacture, we can

see no reason why it should not be completed and prepared for market. And in our opinion, the authority here expressly conferred would have been implied by law as necessarily incident to the principal powers granted. Where the estates of insolvent men are liable to be transferred, and that too, generally, without much discretion in the selection of a propitious opportunity, it will necessarily happen that property of all kinds and in every stage of preparation for market, will come into the hands of assignees ; and unless they exercise the power of preparing it for market, it will often perish or be sacrificed. Of the propriety and expediency of the measures to be adopted, they must judge in the first instance. Whether they abuse their trust or not, may be inquired into in a proper form of ac tion.

6. The note given by one of the assignors in the name of the firm, even if fraudulent, and if the assignees participated in the fraud, would not defeat the rights of the creditors to have the trust fund administered according to the statute. It must be remembered, that the assignees do not hold for themselves but for others, and that it is not their interest, but the interests of innocent creditors, which are to be affected by the plaintiffs' claim. The existence or the creation of fraudulent debts, will not avoid the regular assignment of property of insolvents for the payment of their debts. It is not even one of the grounds mentioned in the statute for invalidating the discharge. The proper time for the investigation of the validity of the debts of the assignors, would be when the respective claims of the several creditors are brought forward with a view to the distribution of the assets in the hands of the trustees.

Whether this note should be allowed, as a partnership or individual debt, or whether it should be rejected altogether, is not proper now to inquire ; because these inquiries would not affect the validity of the assignment, and because they never can arise in any form, inasmuch as the note itself has been cancelled.

*Trustees discharged.*